**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EARL N. EPPS, PH.D. and KAREN EPPS, husband and wife,<br><br>          Plaintiffs,<br><br>vs.<br><br>PHOENIX ELEMENTARY SCHOOL DISTRICT, and its GOVERNING BOARD, a political subdivision of the State of Arizona,<br><br>          Defendants. | No. CV-07-1024-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment of Defendants Phoenix Elementary School District and its Governing Board. (Dkt. # 15.) For the reasons set forth below, the Court grants Defendants' motion.

**BACKGROUND**

Plaintiff Earl N. Epps is an African-American man who was over the age of 40 at all times relevant to this action. Plaintiff was formerly employed by Defendant Phoenix Elementary School District ("the District") as the principal of Bethune Elementary School ("Bethune"). Plaintiff was hired in 1995 and remained principal until June 30, 2005, when his employment contract expired. During his last few years of employment with the District, Plaintiff was supervised by then-superintendent Dr. Rene Diaz. On April 5, 2005, the District's Governing School Board ("the Board") voted not to renew Plaintiff's employment contract, ostensibly because of the possible closure of Bethune as a result of

the school's low academic performance. The next day, Plaintiff received written notice of the Board's decision as well as a teaching contract offer and an invitation to apply for open positions within the District. Plaintiff declined the teaching offer and did not apply for any of the open positions. On May 31, 2005, the Board voted to close Bethune for the 2005-2006 school year. It is not entirely clear from the record when Bethune actually closed its doors, nor is it clear what was happening at Bethune during the 2005-2006 school year. Eventually, however, in July of 2006, Bethune was reopened and a Caucasian female under the age of 40 became principal for the 2006-2007 school year.

Around the time of Plaintiff's non-renewal, the District also declined to renew the contracts of two other principals, Albert Castruita (a Hispanic) and Tom Weaver (a Caucasian), again on the basis of the possibility that their schools would be closed. Castruita's school was eventually closed and, like Plaintiff, he was invited to apply for administrative vacancies. He did so and was hired. Ultimately, the Board voted not to close Weaver's school, and, as a result, it extended him a new contract.

Plaintiff also alleges in his Complaint that during his employment he witnessed disparate treatment of two similarly-situated employees of the District, one Caucasian and one African-American. Plaintiff suspected that both had been involved in embezzlement and that the African-American employee received a much harsher punishment than the Caucasian employee. Plaintiff claims that when he voiced his concern of disparate treatment to Diaz, in November of 2004, Diaz reacted with hostility. Plaintiff also claims that, after he informed his leadership team (who in turn informed parents and community members) of the Board meeting on March 1, 2005, in which the possible closure of Bethune was discussed, Diaz once again became very upset with him.

Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") on October 13, 2005, alleging that the District's treatment of him violated Title VII of the Civil Rights Act as well as the Age Discrimination in Employment Act ("ADEA"). (Dkt. # 16 Ex. D.) Plaintiff did not allege in the charge that he was retaliated against either for reporting disparate treatment based on race or for informing his leadership team of the

Board meeting addressing the potential closure of Bethune. Nor did Plaintiff check the "Retaliation" box on the EEOC charge form. Rather, in his charge Plaintiff only claimed that the non-renewal of his employment contract resulted from both race and age discrimination. (*Id.*) The EEOC issued a right to sue letter on February 28, 2007. (Dkt. # 16 at 4.) On May 22, 2007, Plaintiff filed the complaint underlying this action, alleging that Defendants discriminated against him on the basis of race and age. (Dkt. # 2 at 2-3.) Plaintiff also alleged retaliation based on his allegations that others were disparately treated based on their race and his discussion with his leadership team regarding the closure of Bethune. (*Id.* at 3.) Finally, Plaintiff makes state law claims for retaliatory discharge, wrongful termination, breach of contract, and defamation. (*Id.* at 2-3.) On October 31, 2008, Defendants filed a motion for summary judgment. (Dkt. # 15.)

**DISCUSSION**

**I.     Summary Judgment Standard**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994).

Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

## II. Analysis

### A. Federal Retaliation Claim

Plaintiff alleges that Defendants retaliated against him in response to his accusation of racially disparate treatment and based on his discussion with his leadership team regarding the potential closure of Bethune. (Dkt. # 19 at 2-3.) Defendants assert, however, that Plaintiff's retaliation claim is precluded because Plaintiff did not include these allegations in his charge with the EEOC. (Dkt. # 15 at 7.) More specifically, Defendants argue that, because the allegations included in his EEOC charge are based on different facts than his retaliation claim, and because Plaintiff failed to check the box marked "Retaliation" on the EEOC form, Plaintiff has failed to exhaust his administrative remedies and his claim is therefore precluded. (*Id.*)[1]

The Ninth Circuit has held that "Title VII claimants generally establish federal court jurisdiction by first exhausting their EEOC administrative remedies." *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990). The federal court's "[s]ubject matter jurisdiction extends over all allegations of discrimination that either fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (internal quotations omitted); *see also Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) ("[T]he district court has jurisdiction over any charges of discrimination that are like or reasonably related to the allegations made before the EEOC. . . .") (internal quotations omitted); *Sosa*, 920 F.2d at 1456. Moreover, this Circuit has repeatedly held that because such charges are made by those who are unfamiliar with the technical aspects of formal pleading, the charges are to be construed liberally. *Sosa*, 920 F.2d at 1456; *see also B.K.B.*,

---

[1] Defendants do not argue that the acts underlying Plaintiff's retaliation claim fail to constitute "protected activity." *Wrighten v. Metro. Hosp., Inc.*, 726 F.2d 1346, 1354 (9th Cir. 1984) (explaining that in order for a plaintiff to establish a prima facie case of retaliation, he must show, among other things, that he was engaged in protected activity). Thus, for the purposes of this motion, the Court will assume that Plaintiff's factual allegations implicate protected activity.

- 4 -

276 F.3d at 1100; *Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1480 (9th Cir. 1997); *Chung v. Pomona Valley Cmty. Hosp.*, 667 F.2d 788, 792 (9th Cir. 1982).

Plaintiff failed to mark the box labeled "Retaliation" as a basis for his EEOC charge. The mere absence of a checked box on his EEOC charge, however, is not necessarily dispositive of the issue. The content of his charge must be examined to determine whether it was likely that the EEOC's investigation would uncover the alleged retaliation. *See Leong*, 347 F.3d at 1122; *B.K.B.*, 276 F.3d at 1100. Thus, whether the retaliation charge was "like or reasonably related" to the allegations made to the EEOC is the dispositive inquiry. *Leong*, 347 F.3d at 1122. In the written statement describing the particulars of his charge, Plaintiff alleged only that his employment contract was not renewed and that it was his belief that he had "been discriminated against because of [his] race . . . and because of [his] age . . . ." (Dkt. # 16 Ex. D.) The charge includes neither an allegation of retaliation nor facts supporting the claim Plaintiff now advances. Rather, Plaintiff's charge to the EEOC was narrow in scope, focusing solely on race and age discrimination. Plaintiff pointed to no specific acts besides the fact that his contract was not renewed. Plaintiff's retaliation claim is predicated on a different set of facts than are his race and age discrimination claims, and thus is not "like or reasonably related" to his discrimination charge. Given the information in the EEOC charge, an investigation of the retaliation claim Plaintiff now brings could not reasonably be expected to grow out of the investigation of his personal discrimination claims.[2] As a result, Plaintiff has failed to exhaust his administrative remedies for the retaliation claim, and it must therefore be dismissed.[3]

---

[2] Plaintiff argues that he "submitted ample documentary and verbal information to the EEOC," and that based on this information the EEOC would have had notice of his retaliation claim. (Dkt. # 19 at 6.) However, Plaintiff has provided the Court with no such information aside from the EEOC charge itself. Plaintiff has therefore failed to set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

[3] Additionally, discrimination claims must be filed with the EEOC within 180 days of the alleged discriminatory acts. 42 U.S.C. § 2000e-5(e)(1); *see also Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 1999). Here, assuming that the last

- 5 -

**B.     Discrimination Claims**

As noted above, Plaintiff alleges race discrimination in violation of Title VII and age discrimination in violation of the ADEA.  The Court will address each in turn.

**1.     Race Discrimination**

As the Supreme Court set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and interpreted by *Chuang v. University of California-Davis*, 225 F.3d 1115 (9th Cir. 2000), there are four elements a plaintiff must satisfy in order to establish a prima facie case of racial discrimination.  "[T]he plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chuang*, 225 F.3d at 1123.  In the event that the plaintiff is able to establish a prima facie case, "the burden of production, but not persuasion" then shifts to the defendant to offer a legitimate non-discriminatory reason for the employment action. *Id.* at 1123-24.  If the employer is able to articulate a non-discriminatory reason, the burden shifts back to the plaintiff, who must be "afforded a fair opportunity to show that [the] stated reason for [the challenged action] was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804.  If the plaintiff wishes to show indirectly that the employer's reason is "unworthy of credence," the plaintiff's evidence must be "specific" and "substantial" in order to create a triable issue. *Godwin v. Hunt Wesson Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998).  The Ninth Circuit has refused to find a "genuine issue" where the only evidence presented is "uncorroborated and self-serving" testimony. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).

Under the *McDonnell Douglas* framework, Plaintiff has failed to establish a prima facie case of racial discrimination.  Specifically, Plaintiff has not demonstrated that "similarly situated individuals outside his protected class were treated more favorably."  Following the non-renewal of his contract and closure of his school, Principal Castruita (a Hispanic) was

---

discriminatory act that occurred was the non-renewal of Plaintiff's employment contract, well over 180 days have passed and Plaintiff is now precluded from filing a retaliation claim with the EEOC based on these allegations.

- 6 -

invited to apply for administrative vacancies, did so, and was hired. (Dkt. # 16 at 3.) Plaintiff received a similar invitation in a letter from the Board dated April 6, 2005. (Dkt. #15 at 3.) The letter also made available a teaching contract. Plaintiff neither accepted the teaching contract nor applied for any open positions within the District. Under these circumstances, it cannot be said that Principal Castruita was treated more favorably. When Dr. Diaz recommended to the Board that Principal Tom Weaver's school be closed, Weaver's employment contract was also not renewed. Weaver is a Caucasian individual and thus outside of Plaintiff's protected class. The Board ultimately voted not to close Weaver's school and as a result offered Weaver a new contract. No reason is offered why the Board decided not to close Weaver's school, but the evidence establishes that Castruita, Weaver, and Plaintiff were all treated the same when the possibility arose that their respective schools would be closed. Based on the treatment of these similarly-situated principals, and the absence of any other evidence of disparate treatment in the record, Plaintiff has failed to make a prima facie case of race discrimination.

Even if Plaintiff had satisfied his burden of establishing a prima facie case, however, Defendants have offered a legitimate, non-discriminatory reason for the non-renewal: the possible closure of Plaintiff's school due to low academic performance. Plaintiff fails to meet his burden of offering "specific" and "substantial" evidence that the closure of Bethune was pretext for his non-renewal. Plaintiff claims that he "can demonstrate that Bethune was performing and progressing when the appropriate scores are utilized to objectively measure the school, versus data presented by the Board slanted to merely justify the closure of Bethune." (Dkt. #19 at 3.) However, Plaintiff is merely alleging that the scale scores used by the District to measure school progress in all of its schools are not an accurate indication of his school's progress. Plaintiff does not claim or offer evidence that the Board used a different standard to gauge the progress of his school, nor does he argue or present evidence to suggest that the standards were adopted merely to facilitate his non-renewal. Rather, Plaintiff seems simply to disagree with the measurement implemented by the District and he does not assert or provide evidence to suggest that the scores were adopted merely for the purpose of securing

his termination. For this reason, Plaintiff has failed to meet his burden of providing "specific" and "substantial" evidence that the District's proffered reason for closure was pretext. As a result, Defendants are entitled to summary judgment on the Title VII racial discrimination claim.

### 2. Age Discrimination[4]

The *McDonnell Douglas* burden-shifting framework also applies to ADEA claims. *Palmer v. United States*, 794 F.2d 534, 537 (9th Cir. 1986). In order for a plaintiff to establish a prima facie case of age discrimination, he must show that he was: (1) at least forty years old; (2) performing his job in a satisfactory manner; (3) discharged; and (4) replaced by a substantially younger employee with equal or inferior qualifications.[5] *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 704-05 (9th Cir. 1993); *see also Tempesta v. Motorola, Inc.*, 92 F. Supp. 2d 973, 981 (D. Ariz. 2000).

Here, Plaintiff has failed to establish a prima facie case of age discrimination because he has provided no evidence regarding the qualifications of his replacement sufficient to meet the fourth requirement. In *Tempesta*, the court held that because the "[p]laintiff has failed to

---

[4] In his Complaint, Plaintiff also alleged a violation of the Older Workers Benefit Protection Act., Pub. L. No. 101-433, 104 Stat. 978 (1990). In their Motion for Summary Judgment, Defendants argue that the Act is not applicable to this case. Plaintiff does not disagree, nor does he rebut Defendants' argument. Therefore, the Court enters summary judgment on this count. *See Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005).

[5] The failure to satisfy the fourth element is not necessarily fatal if a plaintiff can demonstrate that he was "discharged under circumstances otherwise giving rise to an inference of age discrimination." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). In *Diaz*, the Ninth Circuit stated that this modified test is appropriate only in cases involving a reduction in the workforce because, in such cases, no replacement is usually hired. *Id.* at n.2. Even assuming the *Diaz* exception applies, however, Plaintiff has failed to make out a prima facie case because a plaintiff "*must* show through circumstantial, statistical or direct evidence that the discharge occurred under circumstances giving rise to an inference of discrimination." *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (emphasis added and quotations omitted). Plaintiff has not argued that any such evidence exists on his age discrimination claim, and none is evident from the record. Thus, Plaintiff has failed to make out a prima facie case even under the *Diaz* exception.

- 8 -

provide sufficient admissible evidence of the qualifications of the [younger and allegedly favored employee,] . . . the Court cannot determine whether the younger employee and Plaintiff were similarly situated." 92 F. Supp. 2d at 981; *see also Swan v. Bank of America Corp.*, No. 2:07-CV-00217, 2008 WL 2859066, at *6 (D. Nev. July 22, 2008) (holding that because the plaintiff bank employee "provide[d] no evidence concerning what prior or relevant experience or education the replacement [had] or lacked," and because she failed to "compare her replacement's qualifications with her own," the plaintiff failed to make out a prima facie case of age discrimination).

Like the plaintiffs in both *Tempesta* and *Swan*, Plaintiff has provided no evidence regarding the qualifications of the female principal who took his position at Bethune. Both parties agree that she was under the age of forty, but without any evidence comparing her experience and education to Plaintiff's experience and education, Plaintiff "fails to raise a genuine issue of material fact concerning [his] replacement's equal or inferior qualifications." *Swan,* 2008 WL 2859066, at *6. Because Plaintiff has failed to establish a prima facie case of age discrimination, Defendants are entitled to summary judgment on the ADEA claim.

**C.     State Claims**

Defendants also move for summary judgment on Plaintiff's state law claims. However, because the Court has entered summary judgment on Plaintiff's federal law claims, the original basis for federal jurisdiction over this case no longer exists. In this situation, the Court has the discretion to either retain or decline jurisdiction over the disposition of the remaining state law claims. *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) ("[A] federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c) . . . . That state law claims *should* be dismissed if federal claims are dismissed before trial has never meant that they *must* be dismissed.") (internal citations and quotations omitted). That decision is informed by the values of "economy, convenience, fairness, and comity." *Id.* at 1001 (internal quotations omitted). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors

. . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

In this case, the balance of factors counsel that the Court should decline to exercise jurisdiction over the remaining state law claims. No significant judicial economy will be lost by declining jurisdiction, and it will certainly be as convenient and fair to the parties to litigate the state law claims in state court. Moreover, as several of the issues in this case may require the interpretation of Arizona law, the Arizona courts have a vested interest in interpreting and applying state law themselves. Therefore, the Court declines to exercise jurisdiction over Plaintiff's state law claims.

Because the Court declines to retain jurisdiction over Plaintiff's state law claims, the Court need not rule on the aspects of Defendants' motion implicating those claims.

## CONCLUSION

Plaintiff has failed to raise any genuine issue of material fact that would prevent entry of summary judgment on his federal law claims, and the Court declines to exercise jurisdiction over the remaining state law claims.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Dkt. # 15) is **GRANTED** as to his federal law claims.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to **TERMINATE** this action.

**DATED** this 14th day of April, 2009.

_____
G. Murray Snow
United States District Judge